UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

STEPHEN KANTOR,

      Plaintiff,

v.                                    CASE NO. 6:20-cv-1337-MCR

ACTING COMMISSIONER OF
THE SOCIAL SECURITY
ADMINISTRATION,

      Defendant.
_____/

## MEMORANDUM OPINION AND ORDER[1]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative decision denying his applications for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI"), alleging disability beginning April 18, 2017. Following an administrative hearing held on October 9, 2019, the assigned Administrative Law Judge ("ALJ") issued a decision, finding Plaintiff not disabled from April 18, 2017, the alleged disability onset date, through November 29, 2019, the date of the ALJ's decision.[2] (Tr. 15-62.)

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. (Doc. 30.)

[2] Plaintiff had to establish disability on or before March 31, 2022, his date last insured, in order to be entitled to a period of disability and DIB. (Tr. 16.) The

In reaching the decision, the ALJ found that Plaintiff had the following severe impairments: obsessive-compulsive disorder ("OCD"), anxiety disorder, and autism spectrum/Asperger's syndrome. (Tr. 18.) The ALJ further found that Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, but was limited to performing "simple, routine, and repetitive tasks," making "simple work-related decisions," and having "occasional interaction with supervisors, co-workers, and the public." (Tr. 20.) Then, at step five of the sequential evaluation process,[3] based on the testimony of the vocational expert ("VE") and considering Plaintiff's age, education, work experience, and RFC, the ALJ found that there were jobs existing in significant numbers in the national economy that Plaintiff could perform. (Tr. 24-25.) Specifically, the ALJ listed the following representative jobs, which are unskilled, with a Specific Vocational Preparation ("SVP") level of 1 or 2: hand packager (DOT # 920.587-018), laundry laborer (DOT # 361.687-018), packer of agricultural produce (DOT # 920.687-134), and cleaner II (DOT # 919.687-014). (Tr. 24.)

Plaintiff is appealing the Commissioner's decision that he was not disabled from April 18, 2017 through November 29, 2019. Plaintiff has

---

earliest time that SSI benefits are payable is the month following the month in which the application was filed. *See* 20 C.F.R. § 416.335.

[3] The Commissioner employs a five-step process in determining disability. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

2

exhausted his available administrative remedies and the case is properly before the Court. Based on a review of the record, the briefs, and the applicable law, the Commissioner's decision is **REVERSED and REMANDED** under sentence four of 42 U.S.C. § 405(g).

## I. Standard of Review

The scope of this Court's review is limited to determining whether the Commissioner applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the Commissioner's findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating the court must

scrutinize the entire record to determine the reasonableness of the Commissioner's factual findings).

## II. Discussion

### A. Issues on Appeal

Plaintiff raises three issues on appeal. First, he argues that the ALJ failed to adequately consider and state the weight accorded to the opinions of Morteza Nadjafi, M.D., Plaintiff's treating psychiatrist at Advanced Psychiatric Group, and Mary-Catherine Segota, Psy.D., the State agency examining psychologist. (Doc. 28 at 7-12.) Plaintiff's second argument is that the ALJ erroneously relied on the VE's testimony in response to an incomplete hypothetical question. (*Id.* at 12-17.) Plaintiff argues that the hypothetical question did not account for Plaintiff's moderate limitations in concentration, persistence, and pace, or for the limitations supported by the records of Dr. Nadjafi and Dr. Segota. (*Id.* at 13-15.) Plaintiff also argues that there was no substantial evidence to support the ALJ's finding that there was a significant number of jobs in the national economy that Plaintiff could perform, because the VE "did not provide an accurate number of jobs available in the national economy for each of the jobs she indicated would be available to the hypothetical person." (*Id.* at 12, 15-17.) Plaintiff's third argument is that the ALJ did not sufficiently consider Plaintiff's subjective complaints because the ALJ did not provide any specific reasons for

4

undermining his testimony or for supporting the ALJ's credibility determination. (*Id.* at 17-20.) Defendant responds that substantial evidence supports the ALJ's RFC assessment, step-five finding, and his evaluation of Plaintiff's subjective complaints. (Doc. 36.)

### B. Standard for Evaluating Opinion Evidence and Subjective Symptoms

The ALJ is required to consider all the evidence in the record when making a disability determination. *See* 20 C.F.R. §§ 404.1520(a)(3), 416.920(a)(3). With regard to medical opinions, the rules in 20 C.F.R. §§ 404.1520c, 416.920c apply to claims filed on or after March 27, 2017.[4] *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 F.R. 5844-01, 2017 WL 168819 (Jan. 18, 2017). Because Plaintiff's claim was filed after March 27, 2017, the Court applies the revised rules and regulations in effect at the time of the ALJ's decision.

Under the revised rules and regulations, the ALJ need "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . , including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). The ALJ will articulate in the administrative decision how persuasive all of the medical opinions are in

---

[4] The rules in 20 C.F.R. §§ 404.1527, 416.927 apply to claims filed before March 27, 2017.

the case record, 20 C.F.R. §§ 404.1520c(b), 416.920c(b), but need not articulate how evidence from non-medical sources has been considered, 20 C.F.R. §§ 404.1520c(d), 416.920c(d).

"When a medical source provides one or more medical opinions," those opinions will be considered "together in a single analysis," using the factors listed in 20 C.F.R. §§ 404.1520c(c)(1) through (c)(5), 416.920c(c)(1) through (c)(5), as appropriate. 20 C.F.R. §§ 404.1520c(a), (b)(1), 416.920c(a), (b)(1). The ALJ is "not required to articulate how [he/she] considered each medical opinion . . . from one medical source individually." 20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1).

When evaluating the persuasiveness of medical opinions, the most important factors are supportability[5] and consistency.[6] 20 C.F.R. §§ 404.1520c(a), (b)(2), 416.920c(a), (b)(2). Thus, the ALJ "will explain how [he/she] considered the supportability and consistency factors for a medical source's medical opinions" in the determination or decision but is not required to explain how he/she considered the rest of the factors listed in 20

---

[5] "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . , the more persuasive the medical opinions . . . will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).

[6] "The more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

C.F.R. §§ 404.1520c(c), 416.920c(c).  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  When "two or more medical opinions . . . about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same," the ALJ will articulate how he/she considered the other most persuasive factors listed in 20 C.F.R. §§ 404.1520c(c)(3) through (c)(5), 416.920c(c)(3) through (c)(5), which include a medical source's relationship with the claimant,[7] specialization, and other factors.[8]  20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

When a claimant seeks to establish disability through his own testimony of pain or other subjective symptoms, the Eleventh Circuit's three-part "pain standard" applies.  *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (per curiam).  "If the ALJ decides not to credit such testimony, he [or she] must articulate explicit and adequate reasons for doing so."  *Id.*

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition

---

[7] The relationship with the claimant factor combines consideration of the following issues: the length of the treatment relationship, the frequency of the examinations, the purpose of the treatment relationship, the extent of the treatment relationship, and the examining relationship.  20 C.F.R. §§ 404.1520c(c)(3)(i)-(v), 416.920c(c)(3)(i)-(v).

[8] The other factors may include: the medical source's familiarity with the other evidence in the claim; the medical source's understanding of the disability program's policies and evidentiary requirements; and the availability of new evidence that may render a previously issued medical opinion more or less persuasive.  20 C.F.R. §§ 404.1520c(c)(5), 416.920c(c)(5).

>is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Id.*

Once a claimant establishes that his subjective symptom is disabling through "objective medical evidence from an acceptable medical source that shows . . . a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms," pursuant to 20 C.F.R. §§ 404.1529(a), 416.929(a), "all evidence about the intensity, persistence, and functionally limiting effects of pain or other symptoms must be considered in addition to the medical signs and laboratory findings in deciding the issue of disability," *Foote*, 67 F.3d at 1561. *See also* SSR 16-3p[9] (stating that after the ALJ finds a medically determinable impairment exists, the ALJ must analyze "the intensity, persistence, and limiting effects of the individual's symptoms" to determine "the extent to which an individual's symptoms limit his or her ability to perform work-related activities").

As stated in SSR 16-3p:

>In considering the intensity, persistence, and limiting effects of an individual's symptoms, [the ALJ must] examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information

---

[9] SSR 16-3p rescinded and superseded SSR 96-7p, effective March 28, 2016, eliminating the use of the term "credibility," and clarifying that "subjective symptom evaluation is not an examination of an individual's character." SSR 16-3p.

> provided by medical sources and other persons; and any other relevant evidence in the individual's case record.
>
> . . .
>
> In evaluating an individual's symptoms, it is not sufficient for our adjudicators to make a single, conclusory statement that "the individual's statements about his or her symptoms have been considered" or that "the statements about the individual's symptoms are (or are not) supported or consistent." It is also not enough for our adjudicators simply to recite the factors described in the regulations for evaluating symptoms.[10] The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms.
>
> . . .
>
> In evaluating an individual's symptoms, our adjudicators will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation. The focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person. Rather, our adjudicators will focus on whether the evidence establishes a medically determinable impairment that could reasonably be expected to produce the individual's symptoms and given the adjudicator's evaluation of the individual's symptoms, whether the intensity and persistence of the symptoms limit the individual's ability to perform work-related activities[.]

SSR 16-3p.

---

[10] These factors include: (1) a claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) any precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate the claimant's pain or other symptoms; (5) any treatment, other than medication, received by the claimant to relieve the pain or other symptoms; (6) any measures (other than treatment) used to relieve the pain or other symptoms (*e.g.*, lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms.  20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); SSR 16-3p.

"[A]n individual's attempts to seek medical treatment for symptoms and to follow treatment once it is prescribed" will also be considered "when evaluating whether symptom intensity and persistence affect the ability to perform work-related activities." *Id.* "[I]f the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, or if the individual fails to follow prescribed treatment that might improve symptoms, [the adjudicator] may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record." *Id.* However, the adjudicator "will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints." *Id.* In considering an individual's treatment history, the adjudicator may consider, *inter alia*, one or more of the following:

- That the individual may have structured his or her activities to minimize symptoms to a tolerable level by avoiding physical activities or mental stressors that aggravate his or her symptoms;
- That the individual may receive periodic treatment or evaluation for refills of medications because his or her symptoms have reached a plateau;
- That the individual may not agree to take prescription medications because the side effects are less tolerable than the symptoms;
- That the individual may not be able to afford treatment and may not have access to free or low-cost medical services;
- That a medical source may have advised the individual that

10

>   there is no further effective treatment to prescribe or recommend that would benefit the individual;
> - That due to various limitations (such as language or mental limitations), the individual may not understand the appropriate treatment for or the need for consistent treatment.

*Id.*

### C. Analysis

Turning to Plaintiff's third argument on appeal, the Court finds that the ALJ's statements for discrediting Plaintiff's subjective complaints are not supported by substantial evidence in the record. The ALJ found that while Plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms, Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were "not entirely consistent with the medical evidence and other evidence in the record." (Tr. 21.) The ALJ explained:

> [A]lthough the claimant continues to have symptoms of OCD, anxiety disorder, and autism spectrum/Asperger's syndrome, his presentation on mental status examinations demonstrates that he has a greater degree of functioning than alleged.
>
> On April 10, 2017, the claimant presented for an office visit with Morteza Nadjafi, M.D. in order to follow up with respect to his anxiety and OCD. Dr. Nadjafi noted that the claimant appeared frazzled, talked non-stop, and got frustrated when facing minor challenges. On mental status examination, the claimant was poorly groomed, appeared tense and had pressured speech, irritable mood, constricted affect, and he was preoccupied with future plans (Exhibit 1F/26-27).

11

> Subsequently, on November 19, 2017, the claimant presented for a psychological consultative examination with Dr. Segota. On mental status examination, the claimant was able to answer questions and appeared to understand the evaluation process, but he talked until he was interrupted. The claimant was cooperative and Dr. Segota was able to establish rapport. The claimant exhibited varying concentration, he spoke quickly, and his rate of thought was fast with tangential continuity of ideas. The claimant had a hyper-verbal affect, but there were no signs of perceptual abnormalities, illusions, or delusions. The claimant reported a history of compulsive behavior, and he was preoccupied with being let go from his job for doing the right thing. On memory and concentration testing, he was able to repeat six digits forward and five digits backward, remember one of three words after a five-minute delay, and the claimant could recall an additional word with a prompt. Dr. Segota further noted that the claimant had no difficulty with serial sevens, and that he could conduct simple addition, subtraction, multiplication, and division problems (Exhibit 7F/4-5).
>
> Over the course of subsequent follow up visits, although the claimant continued to present with pressured speech, anxious mood, and talked excessively during examinations, findings on mental status examination demonstrate that his thought processes were goal-directed, he had appropriate perceptions, and he was cooperative with his mental health care providers (Exhibit 16F/1, 3, 5, 9, and 12-14).

(Tr. 21-22.)

Contrary to the ALJ's statements, Plaintiff's mental status examinations actually support his complaints of disabling limitations. Citing to Dr. Nadjafi's progress notes from February 14, 2018, May 16, 2018, July 30, 2018, October 30, 2018, January 29, 2019, April 23, 2019, and July 23, 2019, the ALJ stated that Plaintiff's thought processes were goal-directed, he had appropriate perceptions, and he was cooperative with his mental health

care providers. (Tr. 22.) However, only some of these progress notes support the ALJ's statement and they do so only in part. (*See* Tr. 562 (noting that on February 14, 2018, Plaintiff was cooperative and had appropriate perceptions, but was poorly groomed and anxious in appearance/attitude, exhibited tense and apathetic behavior, pressured speech, anxious mood, constricted affect, tangential and goal directed thought process, and obsessive thought content); Tr. 561 (noting that on May 16, 2018, Plaintiff was cooperative and had appropriate perceptions and thought processes, but was poorly groomed and anxious in appearance/attitude, exhibited tense behavior, pressured speech, anxious mood, modulated affect, and preoccupied thought content); Tr. 560 (noting that on July 30, 2018, Plaintiff was cooperative and had appropriate perceptions and thought processes, but was poorly groomed and anxious in appearance/attitude, exhibited tense behavior, pressured speech, irritable mood, modulated affect, and preoccupied thought content); Tr. 557-58 (noting that on October 30, 2018, Plaintiff's perceptions were normal, but he exhibited agitated, tense behavior; fast rate, pressured speech; anxious mood; racing thought process; thought content indicating obsessions with comic books; and impulsive, unrealistic insight/judgment).) To the extent the ALJ relied on Dr. Nadjafi's progress notes for the period February 14, 2018 through July 23, 2019, his statements are not supported by substantial evidence.

13

Dr. Nadjafi's progress notes are replete with abnormal examination findings that lend support to Plaintiff's subjective complaints of disabling symptoms, such as high anxiety, agitation, hyperactivity, talking non-stop, obsessive and compulsive behaviors, and inability to focus. (*See* Tr. 562 (noting that on February 14, 2018, Plaintiff was poorly groomed and anxious in appearance/attitude, exhibited tense and apathetic behavior, pressured speech, anxious mood, constricted affect, tangential and goal directed thought process, and obsessive thought content; and appeared to have symptoms of Asperger's syndrome with pathological focus); Tr. 561 (noting that on May 16, 2018, Plaintiff was poorly groomed and anxious in appearance/attitude, exhibited tense behavior, pressured speech, anxious mood, modulated affect, and preoccupied thought content; and was diagnosed with anxiety, autistic spectrum disorder, and obsessive preoccupation); Tr. 560 (noting that on July 30, 2018, Plaintiff was poorly groomed and anxious in appearance/attitude, exhibited tense behavior, pressured speech, irritable mood, modulated affect, and preoccupied thought content; and was diagnosed with severe anxiety, OCD, and insomnia); Tr. 557-58 (noting that on October 30, 2018, Plaintiff exhibited agitated, tense behavior; fast-rate, pressured speech; anxious mood; racing thought process; thought content indicating obsessions with comic books; and impulsive, unrealistic insight/judgment; and was diagnosed with mixed obsessional thoughts and acts, and Asperger's syndrome); Tr. 553

14

(noting that on January 29, 2019, Plaintiff exhibited loud, fast-rate speech and anxious mood; and was diagnosed with mixed obsessional thoughts and acts, and Asperger's syndrome); Tr. 551 (noting that on April 23, 2019, Plaintiff exhibited agitated, tense behavior; pressured speech; anxious mood; thought process showing flight of ideas; thought content indicating obsessions; and poor insight/judgment; and was diagnosed with mixed obsessional thoughts and acts, and Asperger's syndrome); Tr. 549 (noting that on July 23, 2019, Plaintiff had anxious appearance/attitude, agitated behavior, anxious mood, and poor insight/judgment; and was diagnosed with mixed obsessional thoughts and acts, and Asperger's syndrome)[11].)

Further, the hearing testimony fully supports the observations of both Dr. Nadjafi and Dr. Segota that Plaintiff talked non-stop until he was interrupted and that he exhibited varying concentration levels, hyper-verbal affect, and tangential thought process. (*See* Tr. 38-56; Tr. 477 (noting that during the consultative examination on November 9, 2017, Plaintiff talked until he was interrupted; eye contact was intermittent; speech was of a fast rate and large quantity; rate of thought was fast; amount of thought was

---

[11] At those visits, Dr. Nadjafi noted the following history: "[A] 56[-year-old] male with history of sever[e] obsessive compulsive behavior, paranoid thoughts, hyperactivity, [and] poor attention span.  He lost his job at the TSA due to his behavior.  House is dirty, talks non[-]stop. . . . Very obsessive.  Mostly obsessed with buying and selling comic books at a loss." (Tr. 549; *see also* Tr. 551, 553, 555.)

15

large with significantly tangential continuity of ideas; cognition was significantly tangential; and memory, concentration, and abstract verbal reasoning were somewhat impaired).)

In sum, the ALJ's statement that Plaintiff's subjective complaints were inconsistent with "his presentation on mental status examinations" (Tr. 21), is not supported by substantial evidence. In addition, despite referring to the records of Dr. Nadjafi and Dr. Segota in his decision, the ALJ did not state how persuasive these doctors' opinions were in assessing the RFC. In fact, the ALJ only assessed the persuasiveness of the non-examining consultants' opinions and seemed to ignore the opinions of any treating and examining sources. (*See* Tr. 22-23.) Interestingly, Dr. Segota's findings were reiterated in the same paragraph in which the ALJ explained why he found the opinions of the non-examining doctors to be persuasive, but the ALJ did not seem to assess Dr. Segota's opinions. (Tr. 23.) Similarly, the ALJ never assessed the persuasiveness of Dr. Nadjafi's opinions.[12]

---

[12] The record includes multiple progress notes from Dr. Nadjafi for the period August 12, 2015 through July 23, 2019, and a note from Dr. Nadjafi, dated December 15, 2016, which reads as follows:
> I discussed Mr. Kantor's current mental state and opined that Mr. Kantor is severely anxious, his behavior [illegible] being inappropriate, [sic] high anxiety, [and] severe obsessive thoughts. He is not able to engage in any gainful employment, therefore, [he] is disabled. Furthermore, during his employment at the TSA, at some point after his filing a [complaint] and reporting against his supervisor, his anxiety level increased, he became paranoid and finally no longer could

Defendant claims that the records of Dr. Nadjafi and Dr. Segota do not contain medical opinion evidence under the revised regulations. It appears that Defendant is giving a *post hoc* rationalization for the ALJ's decision, but the propriety of that decision must be judged based solely on the reasons provided by the ALJ. *See SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1964) ("[A] simple but fundamental rule of administrative law . . . [is] that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency.").

Thus, on remand, the ALJ will have an opportunity to reconsider Plaintiff's subjective complaints and the records of Dr. Nadjafi and Dr. Segota, and explain how any medical opinions in those records have been assessed. In light of this conclusion, it is unnecessary to address Plaintiff's remaining arguments. *See Jackson v. Bowen*, 801 F.2d 1291, 1294 n.2 (11th Cir. 1986) (per curiam); *Freese v. Astrue*, No. 8:06-cv-1839-T-EAJ, 2008 WL 1777722, at *3 (M.D. Fla. Apr. 18, 2008); *see also Demenech v. Sec'y of the Dep't of Health & Hum. Servs.*, 913 F.2d 882, 884 (11th Cir. 1990) (per curiam).

---

    function at the previous level[,] therefore[,] [he] was placed on administrative leave without pay.
(Tr. 377-78.)

17

Accordingly, it is **ORDERED**:

1. The Commissioner's decision is **REVERSED** pursuant to sentence four of 42 U.S.C. § 405(g) and **REMANDED** with instructions to the ALJ to (a) reconsider Plaintiff's subjective complaints and the records of Dr. Nadjafi and Dr. Segota, and explain how any medical opinions in those records have been assessed; (b) reconsider the RFC assessment, if necessary; and (c) conduct any further proceedings deemed appropriate.

2. The Clerk of Court is directed to enter judgment consistent with this Order, terminate any pending motions, and close the file.

3. The judgment should state that if Plaintiff were to ultimately prevail in this case upon remand to the Social Security Administration, any § 406(b) or § 1383(d)(2) fee application must be filed within the parameters set forth by the Standing Order on Management of Social Security Cases entered in *In re: Administrative Orders of the Chief Judge*, Case No.: 3:21-mc-1-TJC (M.D. Fla. Dec. 7, 2021).

**DONE AND ORDERED** at Jacksonville, Florida, on February 21, 2022.

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record